Daniel G. Brown, Esq. (Bar No. 251134)
LAW OFFICES OF DANIEL G. BROWN
PO Box 5919
San Clemente, CA 92674-5919
Telephone: (949) 892-1100
Facsimile: (949) 892-1150
Email: daniel.brown@baslawfirm.com
Attorney for Defendants HomeGoods, Inc.
and ATI Industries, Inc., dba Prestige Arts

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS FLEMING,<br><br>Plaintiff,<br>vs.<br>HOMEGOODS, INC.,<br>ATI INDUSTRIES, INC., dba<br>PRESTIGE ARTS, and DOES 1-10,<br><br>Defendants. | **CASE No. SACV11-00666 AG(ANx)**<br><br>**DEFENDANTS' TRIAL BRIEF**<br><br>Complaint Filed May 3, 2011<br>Trial: July 19, 2012 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Defendants HOMEGOODS, INC and ATI INDUSTRIES, INC., dba PRESTIGE ARTS ("ATI") hereby provide this TRIAL BRIEF.

***<u>BACKGROUND AND CLAIMS</u>***

Plaintiff Tom Fleming is an artist who works and resides on the east coast. The Defendants' understanding is that Tom Fleming has been an artist for years, primarily creating art for the comic book industry. In the year 2010 Fleming began

a relationship with ATI, through an art agency, in an effort to expand his reach into broader opportunities of the market for commercial art. This relationship broke down after a short period of time in the later months of 2010. The Plaintiff will claim that after the relationship broke down, the Defendants took his art, made multiple copies and sold the same on the open market without permission. The Defendants adamantly deny these allegations. The Plaintiff has a single claim of Copyright Infringement under 17 U.S.C. §501. This claim is asserted against both defendants HOMEGOODS and ATI.

Defendant HOMEGOODS is a national retailer of goods. Defendant ATI INDUSTRIES, INC., dba PRESTIGE ARTS is a company that is located in Laguna Niguel California ATI was founded years ago by its principals, Richard and Janet Guy, who as husband and wife are two well respected members of the Orange County community. Richard and Janet Guy still remain the active managing members of ATI and draw income from this firm. They manage the day to day affairs of this small organization. Richard and Janet Guy are key witnesses in this case. ATI also employs a small number of persons (less than 30), some of which are expected to be called to testify at trial.

This is a bench trial. During trial, the Court will learn how art production and distribution works. Relevant to an understanding of what happened between the Plaintiff and Defendants, the Court will learn how, in the regular course of business, artists contract with agents who in turn contract with art publishers and distributors

such as ATI. The publisher/distributors (such as ATI) then sell the art at various levels, including the retails level such as HOMEGOODS.

Many of the day to day dealings between the artists, the agents, and the publisher/distributors are less formal, wherein many contracts and relationships are created, established, and renewed (if necessary) on oral agreements and through the principles of agency where the art agents wed artists with publishers and bind the appropriate parties to contracts for the distribution and sale of art. As is common practice, a new piece of art may be first introduced to the market and be "tested" by producing a small number of pieces then sampling or selling them. If the test proves positive, a larger number of pieces will then be released into the market, at the right place and at the right time based on the conditions of the art market.

This case is at trial because the relationship between the Plaintiff and Defendant ATI broke down as the Plaintiff's art was being tested. The time period was the summer and fall of 2010. After an initial testing of some similar art pieces, ATI received an order for art from HOMEGOODS, and proceeded to fill the order. As the art for the HOMEGOODS order was being adjusted for commercial production[1], but before any of the art was actually manufactured, the Plaintiff was unhappy with his expected commission and fired his agent. The Plaintiff then

[1] Artwork that is being staged for commercial manufacture is typically transmitted to the publisher via high-resolution digital images. Depending upon the anticipated form of final packaging for the art (framed, not framed, etc), the digital files are typically altered for proper aspect ratio, sizing, cropping, and color, tone, and contrast adjustments.

attempted to deal directly with ATI to alter the terms of compensation for the HOMEGOODS order.

The Plaintiff and ATI never came to terms on the HOMEGOODS order. Upon the Plaintiff's request to kill the order, ATI immediately ceased all efforts in producing the art. The HOMEGOODS order never shipped, and that was that, until the Plaintiff filed this suit.

It is the Defendants belief that the Plaintiff sued because he was erroneously informed that the November 2010 HOMEGOODS order shipped. It did not. This case should not be at trial. The Plaintiff has maintained this action and has done so without doing any significant discovery.

This case did not settle in part due to some confusion as to a certain "test order" for the artwork that was processed in August and September of 2010. During the initial disclosures in this case, the Defendants revealed to the Plaintiff that certain art pieces shipped as part of a "test order" that **<u>may have been</u>** copies of the Plaintiff's art. Defendants preserved their relevant arguments and objections maintaining that, although some art was sold under a certain order that contained a **<u>text designator</u>** that matched the name of the Plaintiff's art, the art that actually shipped as part of the test order may have in fact been <u>different art</u>. The Plaintiff never conducted additional discovery, and just prior to trial Defendant ATI has confirmed that (1) the earlier "test order" was filled with art that <u>was not</u> the

Plaintiff's, and (2) the November 2010 HOMEGOODS order that was the nexus of this dispute was halted the moment the Plaintiff requested.

***THE DEFENSE***

At trial, the Defendants will rebut any and all claims and allegations made by the Plaintiff, and will bring evidence to show that the Plaintiff cannot prove the elements of copyright infringement. Further, the Defendants will demonstrate to the Court that (1) the accused art did not actually ship on any of the Defendants' orders, rendering the Plaintiff without a viable cause of action; an even assuming some copies of the art did ship (which Defendants deny), then (2) the Defendants were under an undisputable contract that allowed them to produce and ship any of the art in question, and (3) through the principles of agency the Defendants were under authority to produce and ship any of the art in question, and (4) in any event, the Plaintiff should be equitably estopped from enforcing any copyright that he may claim to have.

**(1) The Accused Goods Did Not Ship**

Through the testimony of the witnesses, the Defendants will demonstrate that the goods that are in question never actually shipped on any sales order. The Defendants will testify that although one copy each of the accused art ("Spirit of Life" and "Depths of Love") was produced for promotional and display purposes,

nothing was manufactured beyond these single pieces. Without anything shipping as part of any sales order, the Plaintiff's claim for copyright infringement fails.

**(2) The Defendants Were Under a Direct Contract**

Through the testimony of the witnesses, the Defendants will demonstrate that up until approximately November 18, 2010 Plaintiff Tom Fleming had a contract with an art agency by the name of The Finest Touch of Art Incorporated dba Montage Fine Art Licensing and Publishing ("Montage"). Through the principal member of Montage, an individual by the name of Jonnie Chardonn, the Plaintiff had contracted with Montage to license the Plaintiff's art. In turn, the evidence will demonstrate that Montage was under contract to ATI. ATI in turn received an order for the Plaintiff's goods from Defendant HOMEGOODS. The evidence will show that, even assuming any of the Plaintiff's art actually shipped, all of the Defendants had authorization to display, produce, and sell the art under viable contracts that were in place.

**(3) The Defendants Were Authorized to Sell The Art**

Through the testimony of the witnesses, the Defendants will also demonstrate that, assuming the Plaintiff's art actually shipped, the Defendants nonetheless had authority to sell and ship any of the accused art. The Defendants will turn to the principals of the law of agency with this defense.

The principles of agency are applicable in copyright. As an example, one federal case indicates that turning to state law is appropriate and stated that "since the [Copyright] Act does not define 'agent,' we will use state law to guide us on this issue." *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1546 (S.D.N.Y. 1991). Thus, the Copyright statute allows the Defendants to utilize California state law for a defense under the principles of agency.

California codifies agency laws in the California Civil Code. For example, "an agency is actual when the agent is really employed by the principal." Cal Civ Code § 2299, and "is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Cal Civ Code § 2300. Further, "apparent authority may be found even when a principal expressly forbids the conduct in question." *Feigel v. Ministers Life*, 1996 U.S. App. LEXIS 8393 (9th Cir. Or. Apr. 4, 1996).

In the case before this Court, the Defendants will demonstrate that the Plaintiff's art agent, Montage / Jonnie Chardonn, was an actual agent for the Plaintiff Tom Fleming in relation to the accused art. Montgage licensed the art to ATI, who, under license, was alleged to have shipped product to HOMEGOODS.

Authority sufficient to bind a principal can be either actual or apparent. *Aeroquip Corp. v. Adams*, 1999 U.S. App. LEXIS 31229. (9th Cir. Alaska Nov. 24, 1999). The Defendants will demonstrate that, even if an actual agency relationship is not made clear, the Defendants acted with <u>apparent</u> or <u>ostensible</u> authority.

An agency relationship is created "by a principal's manifestation to an agent that, as reasonably understood by the agent, expresses the principal's assent that the agent take action on the principal's behalf." *Columbia Pictures Indus. v. Fung*, 2009 U.S. Dist. LEXIS 122661, 45-46 (C.D. Cal. Dec. 21, 2009) [Copyright infringement action employing law of agency, citing Restatement (Third) of Agency, § 3.01 (2006), also citing to *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52, 109 S. Ct. 2166, 104 L. Ed. 2d 811 & n.31 (1989) (looking to Restatement to determine federal common law of agency under Copyright Act).

Agency relationships can be created orally or in written form, and can be expressed or implied. Express actual authority derives from an act specifically mentioned to be done in a written or oral communication. *Hawaiian Paradise Park Corp. v. Friendly Broadcasting Co*., 414 F.2d 750, 755 (9th Cir. 1969). Implied actual authority comes from a general statement of what the agent is supposed to do; an agent is said to have the implied authority to do acts consistent with that direction. *NLRB v. District Council of Iron Workers*, 124 F.3d 1094, 1098 (9th Cir. 1997).

Agents bind their principals to contracts, and depending upon the circumstances can even bind the principal beyond the scope of what the principal authorized. When the principal permits the agent to appear to have authority to bind the principal, apparent authority exists. *Feigel v. Ministers Life*, 1996 U.S. App. LEXIS 8393, 4-5 (9th Cir. Or. Apr. 4, 1996). "Apparent authority may be

found even when a principal expressly forbids the conduct in question." (Id.). "Where an agent has apparent authority to act in the business entrusted to him, and the [other party] has no knowledge actual or constructive of restrictions to the contrary, the agent's power to alter or modify is coexistent with that of his principal." *Systems XIX, Inc. v. Parker*, 30 F. Supp. 2d 1225, 1230 (N.D. Cal. 1998).

Permission to employ copyrighted material need not be in writing and can be implied. "Permission to employ pre-existing copyrighted material in a sound recording need not be in writing, but can be granted orally or implied from conduct in the form of a non-exclusive license." *Systems XIX, Inc. v. Parker*, 30 F. Supp. 2d 1225, 1230 (N.D. Cal. 1998), citing Nimmer on Copyright § 10:03[A][7]. Apparent authority is created by written or spoken word or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him. *Aeroquip Corp. v. Adams*, 1999 U.S. App. LEXIS 31229 (9th Cir. Alaska Nov. 24, 1999).

During trial the Defendants will demonstrate that the conduct between all the parties clearly manifested an agency relationship. Indeed, the Plaintiff employed an "art agent" to deal with the Defendants in order to sell his art. Unhappy with what have otherwise would have been a handsome commission, the Plaintiff cannot now seek damages in court for conduct that was authorized.

**(4) The Plaintiff Should Be Estopped**

Even if all of the Defendants arguments are not persuasive, Plaintiff Tom Fleming should be estopped from enforcing any copyrights that he claims to own. "Equitable estoppel may deprive a plaintiff of an otherwise meritorious copyright infringement claim." *Boardman v. County of Spokane*, 1995 U.S. App. LEXIS 20735 (9th Cir. Wash. July 26, 1995), citing Melville Nimmer & David Nimmer, 3 Nimmer on Copyright § 13.07, at 13-284 (1994) ("Principles of estoppel applicable elsewhere in the law are equally applicable in copyright infringement actions.").

Through the testimony of the witnesses, the Defendants will demonstrate that that, even if we are to assume that any of the Plaintiff's art actually shipped as part of any order, the whole thing was a big misunderstanding, the Defendants did all the right things and ceased any production activity at the moment the Plaintiff withdrew from the deal, and as a result the Plaintiff should be estopped from asserting any copyrights.

**(5) Damages**

Through the testimony of the witnesses, the Defendants will demonstrate that the Plaintiff's claims for damages are not appropriate because, even if any of Plaintiff's art shipped, the Defendants would clearly be considered "innocent infringers" thus minimizing any damages that could be awarded.

The copyright statute provides minimal damages if a defendant shows that it was not aware and had no reason to know it was infringing. 17 U.S.C. § 504. The defendant shoulders the burden of proving this good faith and that its belief was a reasonable one. Nimmer on Copyright § 14.04[B][2], at 14-40.1 - 14.40.2. see also *Peer International Corp. v. Pausa Records*, 909 F.2d 1332, 1336, 15 U.S.P.Q.2D (BNA) 1530 (9th Cir. 1990), cert. denied, 498 U.S. 1109, 111 S. Ct. 1019, 112 L. Ed. 2d 1100 (1991). In this case, the Defendants will clearly show that if anything shipped at all, and if it was without contract or authority, the Defendants were completely innocent of any knowledge that their acts were not authorized.

The Plaintiff will not be able to show that:

1) His damage claim is certain;
2) His damage claim is not speculative;
3) His claim for damages, measured from the perspective of price per piece, is not accurate, and does not take into account "volume discounts" that are typical in the art marketplace;

***RESTATEMENT OF ALL AFFIRMATIVE DEFENSES***

First Affirmative Defense: Ownership of a Copyright

The Defendants will rebut the Plaintiff's ownership of the copyright.

Second Affirmative Defense: Copyrightability Of The Subject Matter

The Defendants take the position that the Plaintiff's work is not entitled to copyright protection because the work is not original work, is not an independent

creation, contained elements of work that were preexisting; was placed into the public domain; and is not properly registered as copyright.

Third Affirmative Defense: Invalidity of Copyright Registration

The Defendants challenge the Plaintiff's registration of the copyright.

Fourth Affirmative Defense: Unenforceable

The Defendants claim that the Plaintiff cannot enforce the alleged copyright because the work was placed into the public domain prior to any purported use by any defendant.

Fifth Affirmative Defense: Fair Use

The Defendants claim that any purported use of the artwork fell under a "fair use" doctrine.

Sixth Affirmative Defense: Activities Are Non-Infringing

The Defendants claim that any purported use of the artwork was non-infringing use.

Seventh Affirmative Defense: License

The Defendants claim that any purported use of the artwork was under license.

Eighth Affirmative Defense: No Intent

The Defendants claim that any purported unauthorized use of the artwork was done without intent.

Ninth Affirmative Defense: Waiver

The Defendants claim that any purported use of the artwork was non-infringing because the Plaintiff waived enforcement of any copyright protection.

Tenth Affirmative Defense: Contract

The Defendants claim that any purported use of the artwork was non-infringing because the Defendants were authorized to use the artwork pursuant to contract.

Eleventh Affirmative Defense: Laches

The Defendants claim that the Plaintiff is bared from the enforcement of any copyright protection because he waited too long to bring action against the Defendants.

Twelfth Affirmative Defense: Unclean Hands

The Defendants claim that the Plaintiff is barred from the enforcement of any copyright protection because he comes to this Court with unclean hands.

Thirteenth Affirmative Defense: Estoppel

The Defendants claim that the Plaintiff is barred from the enforcement of any copyright protection because, based on the Plaintiffs own conduct, he should be equitably estopped from enforcing any purported copyrights.

***KEY EVIDENCE***

The Defendants will rebut the Plaintiff's claim of copyright infringement and will demonstrate their defense through the use of key evidence. This evidence includes:

a) The testimony of Plaintiff Tom Fleming;

b) The testimony of Richard Guy, a principal of Defendant ATI;

c) The testimony of Janet Guy, a principal of Defendant ATI;

d) The testimony of Joaquin Escobar, an employee of ATI;

e) The testimony of Fred Olszeski, an employee of ATI;

f) The testimony of Jonnie Chardonn, who played a key role in the business relationship between the Plaintiff and Defendant ATI operating as the Montgage entity;

g) Numerous emails concerning the artwork and the business communications between the relevant parties; numerous emails between individuals that were conducting day-to-day business concerning the artwork.

h) Business records of ATI and HOMEGOODS, including Emails, Sales Orders, Purchase Orders, and Invoices.

DATED: July 18, 2012

LAW OFFICES DANIEL G. BROWN

By /s/ Daniel G. Brown
Daniel G. Brown
Attorney for Defendants
HOMEGOODS and ATI

**PROOF OF SERVICE**

DANIEL G. BROWN certifies:

I am an active member of the State Bar of California and am not a party to this action. My business address is 91 Avenida La Pata, San Clemente, CA 92673.

On July 18, 2012 I deposited in the United States mail, postage fully prepaid, a copy of the attached:

**DEFENDANTS' TRIAL BRIEF**

to:

**LAW OFFICES OF LARRY ZERNER**
**1801 Century Park East**
**Suite 2400**
**Los Angeles, CA 90067**

I also caused the same to be served **BY ECF**, where notice was electronically mailed by filing through CM ECF to all registered and subscribed users.

I declare under penalty of perjury under the laws of the State of California and under the laws of the United States that the foregoing is true and correct.

Executed on July 18, 2012, at San Clemente, California.

Daniel G. Brown